672 So.2d 333 (1996)
STATE of Louisiana
v.
Syed A. SALAT.
No. 95 KA 0072.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
*335 Doug Moreau, District Attorney, Monisa L. Thompson, Asst. District Attorney, Baton Rouge, for State of Louisiana, Appellee.
Walter C. Dumas, Baton Rouge, for Defendant-Appellant, Syed A. Salat.
Before WATKINS, FOIL and TANNER, JJ.[1]
THOMAS W. TANNER, Judge Pro Tem.
This criminal appeal arises from the conviction for filing false public records, under La.R.S. 14:133, of defendant, Syed A. Salat. Salat was convicted by a jury of six counts of filing false public records. He was sentenced on each count to two years of imprisonment in the custody of the Department of Corrections, at hard labor, with sentences to run concurrently. Defendant appeals his conviction and sentence, specifying the following assignments of error.

ASSIGNMENTS OF ERROR
Defendant-appellant, Syed A. Salat, relates the following assignments of error:[2]
1. The trial court erred when the trial judge denied defendant's motion to quash.
2. The trial court erred when the trial judge permitted prejudicial, irrelevant and immaterial testimony.
3. The trial court erred when the trial judge denied defendant's motion for mistrial.
4. The trial court erred when the defendant was found guilty.
5. The trial court erred when the trial judge denied defendant's motion for post verdict judgment of acquittal and motion for new trial.
6. The trial court erred when the trial judge denied defendant's motion to reconsider sentence.

FACTS
On April 9, 1992, defendant, an attorney practicing law in Baton Rouge, Louisiana, entered the East Baton Rouge Parish Clerk of Court's office to file a petition for damages. He presented the petition to Troy Simon, a deputy clerk working at the front desk in the Clerk of Court's office. Simon had never before met defendant. At that time, Simon had been working at the front desk for about one year, although he had worked for the Clerk of Court's office since 1985 or 1986.
Salat presented a petition for damages to Simon for filing. Simon testified that the second page of the two-page document had the file date of April 7, 1992, already stamped on it. The front page of the petition also bore a "cost okay" stamp dated April 7, 1992. Defendant indicated to Simon that the petition had been previously filed, but had been withheld due to lack of funds. However, Simon testified, on April 9, 1992, the petition could not have been in the "holding basket" used at that time for lawsuits which were being withheld from further processing, because the jackets used for new lawsuits are in sequential order. Therefore, the number on the jacket could not have been available on April 7, 1992.
Simon filed the petition using his electric time stamp and signed the front of it, backdating it to April 7, 1992. He gave defendant a cost amount and obtained a division allotment for the lawsuit. Defendant gave Simon $50.00 in cash and told Simon he was giving him an early Christmas present.
*336 On April 15, 1992, defendant again visited the East Baton Rouge Parish Clerk of Court's office. This time he presented six petitions to Simon for filing. The first, "Gladys Nelson v. Wal-Mart," bore a stamp for the "cost okay" amount on the first page and a file date on the second page. The file date, as well as the accident date, was January 7, 1991. The second, "Sharrell Newton v. Liberty Lloyds Insurance Company," likewise already bore a "cost okay" and file date stamp; the date of accident, identical to the file date, was January 30, 1991. The third, "Bertrell Johnson v. City of Baton Rouge," like the others, already bore a "cost okay" and file date stamp, with an accident date and file date of April 9, 1991. The fourth, "Ella Parker v. Liberty Lloyds Insurance Company," showed an accident date and file date of February 1, 1991; the fifth, "Patrick and Teneysha Miller v. Liberty Lloyds Insurance Company," showed an accident date and file date of October 5, 1991; and the sixth, "Cassandra Johnson v. East Baton Rouge Parish System," indicated an accident and file date of March 13, 1991. On all of the petitions, service was being withheld. Defendant gave Simon a check for costs in the amount of $425.00; however, according to Simon, he calculated the costs incorrectly. The cost for each suit, with two defendants and no service, was $85.00 and the total cost for six petitions should have been $510.00.
Simon went ahead and filed all six petitions, back-dating them to the dates already indicated on each petition. He testified, "I looked at the suits. I looked at the suits, and noticed that they had file stamp dates on them. It was a judgment call from there ... so what I did was I back-dated them ... I whited out my electric time stamp, to make it look like it was when he first brought it in, with just the hand-stamp date on it and the cost-okay amount."[3]

ASSIGNMENT OF ERROR NO. 1 (ARGUMENT NO. 2 IN DEFENDANT'S BRIEF)
Defendant argues that the indictment did not set out a crime punishable by law and that the filing of a petition for damages containing incorrect information is not a violation of La.R.S. 14:133. Defendant raised this objection before trial in a motion to quash.
An indictment must give a defendant notice of the nature and cause of the prosecution against him. State v. Burrell, 561 So.2d 692, 698, cert. denied, 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 861 (La.1990). An indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. La.C.Cr.P. art. 464. The state must inform a criminal defendant of the nature and cause of the accusation against him. La. Const. art. I, sec. 13.
Here, defendant argues that the definition of "public record" under La.R.S. 44:1(A)(2) is not met by the petitions filed by him in the public records of East Baton Rouge Parish, and that therefore the indictment fails to state a punishable crime. However, the definition of public record under La.R.S. 44:1(A)(2) is not applicable under *337 La.R.S. 14:133.[4] La.R.S. 14:133 does not require that the record filed be "public" but that it must be filed or deposited, with knowledge of its falsity, "in any public office or with any public officer."
Defendant further argues that because La. R.S. 14:133(B) excludes claims for payment from the provisions of the statute, the petitions for damages which he filed must necessarily be excluded. However, it is clear from a reading of the statute that subpart (B) of the statute refers back to subpart (A)(3), concerning the Louisiana Medical Assistance Program.
Defendant also attempts to subvert the meaning of La.R.S. 14:133 to imply that defendant's only action was to file an incorrect petition, a matter, he argues, which may violate the Code of Civil Procedure but not a criminal statute. The indictment, however, charges that defendant and Simon "knowingly and intentionally filed false documents," which clearly states a violation of La.R.S. 14:133. The charge was not that the defendant filed incorrect pleadings, but that he knowingly and intentionally filed false documents into a public record. This is the behavior which La.R.S. 14:133 seeks to punish.
The indictment clearly notified defendant of the charges against him, and was a plain, concise, and definite statement of the facts constituting the offense charged. This assignment of error has no merit.

ASSIGNMENT OF ERRORS NOS. 2 AND 3

(ARGUMENT NOS. 3 AND 4 IN DEFENDANT'S BRIEF)
Defendant argues here that the trial court erred in allowing the prosecutor to elicit irrelevant and prejudicial testimony, and that a mistrial should have been granted. In examining a witness who was a plaintiff in one of the lawsuits listed in the indictment against defendant, the prosecutor began asking a question concerning injuries the petition alleged the witness had received. Defense counsel immediately moved for a mistrial, arguing that the indictment against his client was for filing false documents into the public records, and that any discussion of the content of the documents was immaterial and prejudicial. Outside the presence of the jury, the court told the prosecutor, "Your indictment alleges the filing of false public documents has to do with the dates and times as the documents were filed, not whether or not the allegations contained in the petition are true or not true. And for you to try to get that information in and show through this witness that this gentleman may be lying about what's in that petition comes perilously close to being grounds for a mistrial." However, the trial judge denied defendant's motion for mistrial, and instructed the prosecutor to limit his questions to the witness to the dates and times, rather than the allegations, contained in the petition.
A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;

*338 (5) It is physically impossible to proceed with the trial in conformity with the law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
La.C.Cr.P. art. 775.
Defendant does not make it clear which provision of the article cited above he relies upon in support of his argument that a mistrial should have been granted in this case. In any event, we agree that there was no abuse of discretion by the trial judge here in denying defendant's motion for mistrial. The improper impeachment and/or questioning of a witness will not require the reversal of a conviction absent a clear showing that the matters complained of are of such an extremely prejudicial nature that the defendant was deprived of a fair and impartial trial. State v. Thomas, 589 So.2d 555, 567 (La.App. 1st Cir.1991). Mistrial is a drastic remedy, and should be granted only when defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial. State v. Selvage, 93-1345 (La.App. 1st Cir. 10/7/94); 644 So.2d 745. The determination of whether a mistrial should be granted is within the sound discretion of the trial judge, and denial of a motion for mistrial will not be disturbed on appeal without an abuse of that discretion. State v. Lynch, 94-0543 (La.App. 1st Cir. 5/5/95); 655 So.2d 470, 477; writ denied 95-1441 (La. 11/13/95); 662 So.2d 466.
Here, the witness was not allowed to answer the prosecutor's question before defense counsel moved for mistrial. Defendant argues on appeal that "the prosecutor was permitted to ask a witness if she received the injuries that were listed in one of the petitions listed in the indictment." However, the witness did not respond, and defendant makes no showing that he was prejudiced merely by the asking of the question. This assignment of error has no merit.

ASSIGNMENT OF ERRORS NOS. 3 AND 4

(ARGUMENT NOS. 5 AND 6 IN DEFENDANT'S BRIEF)
Defendant argues here that his motion for new trial and for post verdict judgment of acquittal was erroneously denied. He argues that the evidence was insufficient for a guilty verdict, and that the prosecution did not prove any elements of the crime at all.
Our review of the record for sufficiency of the evidence is governed by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and by State v. Mussall, 523 So.2d 1305 (La.1988). We must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. This standard was codified in La. C.Cr.P. art. 821 governing motions for post verdict judgment of acquittal; it is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. State v. Probst, 623 So.2d 79 (La. App. 1st Cir.), writ denied, 629 So.2d 1167 (La.1993). We must view the evidence from the perspective of a hypothetical rational trier of fact in determining whether an unconstitutional conviction has occurred. State v. Mussall, 523 So.2d at 1310. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Probst, 623 So.2d at 83.
The evidence at trial was overwhelmingly against defendant. Rhonda Cothern, a supervisor with the East Baton Rouge Parish Clerk of Court's office, testified that although each petition was date-stamped on dates earlier than April 15, 1992, the jackets indicate dates of April 15, 1992. Comparing computer records of daily indices from the East Baton Rouge Parish Clerk of Court's office *339 tracking the numbers assigned to each lawsuit filed that day to the sequential suit numbers assigned to the six petitions, Cothern testified that the suit numbers assigned to each of the six petitions did not conform to the suit numbers appearing on the computer indices for the days on which the suits were hand-stamped as filed.
Troy Simon testified that defendant presented the petitions to him with file date stamps already on the signature page of each of the six petitions, and that Simon personally filled in the cost amount for each petition, initialled it as filed, and placed it in the system for further processing.
Through the testimony of defendant's clients and other Baton Rouge attorneys, the prosecution established that defendant had knowledge of the original accident date for each cause of action and of the prescriptive periods for each lawsuit. Each plaintiff testified that he or she informed defendant of the date of accident which was the basis for the lawsuit. An attorney who had previously represented Bertrell Johnson, one of the plaintiffs represented by defendant, testified that he sent a letter to defendant notifying him of the prescription date of Johnson's lawsuit as soon as he knew that defendant would be representing Johnson. Defendant's former secretary testified that he asked her to tell clients who called asking if suit had been filed that he was waiting to hear from an insurance adjuster, or that he was trying to obtain a settlement. Defendant instructed her to pull an unfiled petition from a file cabinet and show it to clients when they asked if suit had been filed yet on their cause of action.
It is clear that the jury must have believed that defendant had knowledge that the petitions he filed alleged false dates of filing, and that the state proved beyond a reasonable doubt that defendant was guilty of filing false records with knowledge of their falsity. We believe that the Jackson standard is met here; any rational trier of fact could have found that defendant was guilty beyond a reasonable doubt. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6

(ARGUMENT NO. 7 IN DEFENDANT'S BRIEF)
Defendant argues that the trial judge erroneously denied defendant's motion to reconsider the sentence. The court, under La. C.Cr.P. art. 881.1, has discretion to resentence defendant, or may deny a motion to reconsider the sentence without a contradictory hearing. The trial judge denied defendant's motion to reconsider the sentence earlier in these proceedings, and stated that the sentences imposed fall within the guidelines recommended for the charges for which defendant was convicted.
The sentence, of six two-year concurrent sentences, was not excessive. The statutory maximum under La.R.S. 14:133 would have been six five-year sentences, to run consecutively, or thirty years. As a general rule, a sentence is excessive if it is grossly out of proportion to the severity of the crime or if it is nothing more than a purposeless and needless imposition of pain and suffering. State v. Lodrige, 414 So.2d 759, 762 (La.1982). The trial judge is given wide discretion in imposing sentences within statutory limits. State v. Willis, 420 So.2d 962 (La.1982). The sentence is commensurate with the crime in this case.
The court did not specifically address the sentencing guidelines contained in La.C.Cr.P. art. 894.1 at the time of the sentencing, but stated in the order denying defendant's motion for reconsideration of sentence that the sentence fell within the guidelines. In State v. Patterson, 572 So.2d 1144 (La.App. 1st Cir.1990), writ denied, 577 So.2d 11 (La.1991), the court found that even though the trial court had not specifically referred to the sentencing guidelines, it was not necessary to vacate the sentence and remand for sentencing when the sentence was not unconstitutionally excessive. Here, the record indicates that the judge did consider the guidelines, and the sentence is not unconstitutionally excessive. We see no need to remand as the sentence is not apparently severe in relation to the particular offender or the actual offense *340 committed. State v. Davis, 448 So.2d 645 (La.1984).
This assignment of error has no merit.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Defendant's brief numbers his assignments of error "2" through "7" rather than "1" through "6". The state argues mistakenly that the first assignment of error was not briefed and is therefore considered abandoned under Uniform Rules-Court of Appeal, Rule 2-12.4. For the sake of clarity, we have provided throughout this opinion the numbering used in defendant's brief.
[3] Simon was indicted along with Salat as a co-defendant. He pled nolo contendere to the charge of filing false public records. The indictment charged six counts, one for each petition filed in the East Baton Rouge Parish Clerk of Court's Office. La.R.S. 14:133, at the time of the indictment, read as follows:

A. Filing false public records is the filing or depositing, with knowledge of its falsity:
(1) Of any forged document for record in any public office or with any public officer;
(2) Of any wrongfully altered document for record in any public office or with any public officer;
(3) Of any false statement or false representation of a material fact made or caused to be made on any document required to be submitted or maintained by any state law, regulation, or rule governing the Louisiana Medical Assistance Program, where such false statement or false representation is made with the intention to violate such law, regulation, or rule.
B. The provisions of this Section shall not apply to claims for payment.
C. The good faith inclusion of any item of cost on a Medical Assistance Program cost report which is later determined by audit to be nonreimbursable under state and federal regulations shall be an affirmative defense to a violation of this Section.
D. Whoever commits the crime of filing false public records shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars, or both.
[4] That definition reads in pertinent part as follows:

All books, records, writings, accounts, letters and letter books, maps, drawings, photographs, cards, tapes, recordings, memoranda, and papers, and all copies, duplicates, photographs, including microfilm, or other reproductions thereof, or any other documentary materials, regardless of physical form or characteristics, including information contained in electronic data processing equipment, having been used, being in use, or prepared, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by or under the authority of the constitution or laws of this state, or by or under the authority of any ordinance, regulation, mandate, or order of any public body or concerning the receipt or payment of any money received or paid by or under the authority of the constitution or the laws of this state, are "public records," except as otherwise provided in this Chapter or as otherwise specifically provided by law.